IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CLARENCE L.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 25-cv-10752 |
| v. | ) | |
| | ) | Magistrate Judge Laura K. McNally |
| FRANK BISIGNANO, | ) | |
| Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER[2]

Before the Court are Plaintiff Clarence L.'s brief in support of reversing the decision of the commissioner (Dkt. 17: Brief Supp. Reversing Decision of Commissioner, "Pl. Br."), Defendant's response in support of summary judgment (Dkt. 22: Def. Response), and Plaintiff's reply (Dkt. 23.)

[1] The Court in this order is referring to Plaintiff by his first name and first initial of his last name in compliance with Internal Operating Procedure No. 22 of this Court.

[2] On September 17, 2025, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to the magistrate judge for all proceedings, including entry of final judgment. (Dkt. 7).

## I. Procedural History

Plaintiff applied for disability insurance benefits on January 17, 2023, alleging disability beginning on January 1, 2020. (R. 33.) Plaintiff's claims were initially denied on May 1, 2023 and upon reconsideration on November 13, 2023. (R. 17.) On August 5, 2024, ALJ Donald D'Amato held a telephone hearing at which Plaintiff, represented by counsel, and Michele Robb, a vocational expert, testified. (*Id.*)

On September 5, 2024, the ALJ issued a decision finding Plaintiff not disabled. (R. 50.) Plaintiff subsequently appealed.[3] For the reasons discussed below, the Court grants Plaintiff's request for remand and denies Defendant's motion.

## II. The ALJ Decision

The ALJ applied the Social Security Administration's five-step sequential evaluation process to Plaintiff's claims. At Step One, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (R. 36.) At Step Two, the ALJ determined that Plaintiff had the severe impairments of osteoarthritis of the knees; hallux valgus and plantar fasciitis of the right foot; pes planus; idiopathic neuropathy; degenerative disc disease; spondylolysis and stenosis of the lumbar spine with sciatica; mood disorder; PTSD; psychosis; and alcohol use disorder. (*Id.*) The ALJ also found that Plaintiff had the nonsevere impairment of hypertension. (*Id.*)

---

[3] The Appeals Council subsequently denied review the opinion (R. 1), making the ALJ's decision the final decision of the Commissioner. *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023).

At Step Three, the ALJ found that none of Plaintiff's impairments met or equaled a Listing. (*Id.*) With respect to Plaintiff's claimed mental impairments, the ALJ evaluated their severity and whether they met a Listing against the four "Paragraph B" functional areas as required in the regulations. The ALJ found that Plaintiff had a mild limitation in the category of understanding, remembering, or applying information and moderate limitations in the remaining categories: interacting with others; adapting and managing himself; and concentrating, persisting and maintaining pace. (R. 37-38.)

Before Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work and that Plaintiff was further limited such that he:

> required work limited to simple, routine tasks with no set hourly quotas; no more than occasional interactive contact with co-workers and supervisors; no more than occasional interactive contact with the public; and there should be no more than occasional changes in the routine work setting. He could lift and/or carry five pounds frequently, and 10 pounds occasionally (from very little up to one-third of an eight-hour workday); stand and/or walk (with normal breaks) for two hours in an eight-hour workday, but required the opportunity to stand for 15 minutes at one time before needing to sit for two minutes before resuming standing so long as he was not off task; and sit (with normal breaks) for six hours in an eight-hour workday, but required the opportunity to sit for 15 minutes at one time before needing to stand for two minutes before resuming sitting so long as he was not off task. He was limited to jobs that allowed use of a hand-held assistive device to ambulate to and from the workstation. He could perform pushing and pulling motions with the upper extremities within the aforementioned weight restrictions for two-thirds of an eight-hour workday, but could only occasionally do so with the lower extremities; and perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching for two-thirds of an eight-hour workday. He needed to avoid hazards such as

> moving machinery and unprotected heights but did not need to avoid hazards typically found in the workplace such as boxes on the floor or ajar doors. He was further limited to jobs involving no commercial driving. He needed to be restricted to a work environment that allowed the individual to avoid frequent concentrated exposure to extreme heat, extreme cold, and high humidity. He could perform occasionally: climbing stairs with handrails, stooping, crouching, kneeling, and crawling, but he needed to avoid climbing ladders, scaffolds, and ropes.

(R. 38-39.)

At Step Four, the ALJ found that Plaintiff had no past relevant work. (R. 48.) At Step Five the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including hand packer, bench assembler, and inspector. (R. 49.) Accordingly, the ALJ concluded that Plaintiff was not disabled. (R. 50.)

## III. Legal Standard

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a claimant is disabled, the ALJ considers the following five "steps" in order: (1) Is the claimant engaging in substantial gainful activity? (2) Does the plaintiff have a severe impairment or combination of impairments? (3) Does the claimant's impairment(s) meet or medically equal one of the impairments listed in

the regulations? (4) Is the claimant able to perform her past relevant work? and (5) Is the claimant able to adjust to any other work? 20 C.F.R. § 404.1520(a)(4). Between Steps Three and Four, the ALJ determines the claimant's RFC, which is defined as the most a claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1).

If the claimant is engaging in substantial gainful activity under Step One, does not have an impairment or combination of impairments as described at Step Two, can perform past relevant work under Step Four, or can adjust to other work under Step Five, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), (ii), (iv), (v). If the claimant has an impairment that meets or equals the requirements of Step Three or is incapable of adjusting to other work under Step Five, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii),(v). The claimant has the burden of proof at Steps One through Four. *Mandrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022). At Step Five, the burden shifts to the Commissioner. *Id.*

The Court does not "merely rubber stamp the ALJ's decision on judicial review." *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022). An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. As the Seventh Circuit stated, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by

a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024).

"All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054. The Seventh Circuit added that "[a]t times, we have put this in the shorthand terms of saying an ALJ needs to provide a 'logical bridge from the evidence to his conclusion.'" *Id*. (citation omitted). The Seventh Circuit has further clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). The district court's review of the ALJ's opinion "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted).

IV. Analysis

Plaintiff's sole argument is that the ALJ failed to meet his Step Five burden to prove that work exists in significant numbers in the national economy that Plaintiff can perform. (Pl. Br. at 3.) *See, Ruenger v. Kijakazi*, 23 F.4th 760, 761 (7th Cir. 2022) (citing 20

C.F.R. § 416.960(c)(2)). Specifically, Plaintiff contends that the ALJ accepted unreliable vocational expert testimony that there were enough available jobs that matched Plaintiff's RFC because the jobs offered by the vocational expert are obsolete or unverifiable. (Pl. Br. at 3-5.) In response, Defendant argues that Plaintiff waived his right to object to the vocational expert's testimony by not raising the issue at the hearing. (Resp. at 2.)

A. Plaintiff Preserved His Objection to the Vocational Expert's Testimony

A disability benefits claimant must object to the vocational expert's testimony or otherwise indicate that the testimony is unreliable during the administrative hearing or after, in a post-hearing brief, to preserve his objection for judicial review. *Leisgang v. Kijakazi*, 72 F.4th 216, 220-21 (7th Cir. 2023). The objection must be specific enough to "indicate that [the claimant] believed the methodology was unreliable." *Fetting v. Kijakazi*, 62 F.4th 332, 337-38 (7th Cir. 2023). After considering the parties' arguments, the Court finds that Plaintiff's post-hearing brief met that standard and therefore, he did not waive his objection to the vocational expert's testimony about the number of jobs available to someone with Plaintiff's RFC.[4]

1. Vocational Expert Hearing Testimony

[4] To the extent Defendant contends that Plaintiff was required to raise his objection at the hearing and that his post-hearing brief could not preserve his challenge (Resp. at 3-4.), that is an incorrect statement of the law. *Fetting*, 62 F.4th at 337 (to avoid forfeiting a challenge to a VE's testimony, a disability claimant must raise his objection during the hearing, or afterwards, in a post-hearing brief); *Coyier v. Saul*, 860 F. App'x 426, 427–28 (7th Cir. 2021).

At the hearing, the ALJ provided the vocational expert with a hypothetical that the ALJ ultimately adopted as his RFC determination. (R. 74-75.) The vocational expert testified that, given those RFC limitations, jobs existed at the sedentary unskilled level that Plaintiff could perform. (R. 76.) Specifically, the vocational expert testified that examples of available jobs included "some hand packer positions, approximately 22,000 nationally, representative DOT 529.687-138. Some bench assembly positions, approximately 12,000 nationally, representative DOT 713.687-018. And some inspector positions, approximately 10,000 nationally, representative DOT 669.687-014." (*Id.*)

After the vocational expert testified, Plaintiff's attorney asked her if the job number estimates were only for the three specific DOT codes she cited (DOT 529.687-138, DOT 713.687-018, and DOT 669.687-014) or for a larger group of codes.[5] (R. 77.) The vocational expert confirmed that the codes were "representative DOT numbers representing a larger group," and Plaintiff's attorney responded "[o]kay. So, the packer position, it wasn't 22,000 itself, it was that group." (*Id.*) When asked, the vocational expert also testified that she used an average of numbers from SkillTRAN and US Publishing to establish her job number estimates. (*Id.*)

2. Plaintiff's Post-Hearing Brief

[5] Both parties use the word "number" to refer both to the VE's job estimates as well as the DOT codes. The Court is substituting the word "code" to refer to the DOT number where needed for clarity.

Plaintiff filed a post-hearing memorandum on August 5, 2024, the same day as the hearing. (R. 314-317.) In it, Plaintiff explained that he had attempted to use SkillTran and US Publishing to replicate the vocational expert's job numbers. Plaintiff attached the SkillTRAN reports from his job search to his post hearing brief. Those reports showed that DOT 669.687-014, which the ALJ called "inspector," was for the job of dowel inspector in the woodworking industry, for which there were only 200 jobs. (R. 315.) DOT 713.687-018, which the vocational expert called a "bench assembler," was for the position of final inspector – optical goods, for which SkillTRAN reported only 66 jobs. (R. 316.) DOT 529.687-138, which the vocational expert called a "hand packer" was for the job of leaf tier – tobacco industry, and which SkillTRAN reported as having only 65 jobs. (R. 317.) Plaintiff argued that these totals did not support that there were a significant number of qualifying jobs in the national economy. (*Id.*)

Plaintiff's post-hearing brief also objected to the vocational expert's use of the three DOT codes as representative evidence that significant positions existed. His argument claimed that the insignificant numbers made it difficult to extrapolate from them to the 41,000 jobs in the vocational expert's testimony.

Finally, Plaintiff's post-heating brief argued that without knowing what other specific jobs the vocational expert believed met Plaintiff's RFC, it was impossible to resolve any apparent conflicts between the jobs cited and the ALJ's hypothetical. (*Id.*)

The Court finds that this argument is specific enough to preserve Plaintiff's objection, and thus we will consider the merits of Plaintiff's dispute with the vocational expert's testimony.

B. The ALJ Did Not Meet His Step Five Burden

The Commissioner bears the step-five burden of establishing that the claimant can perform other work that "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *see also, Britton v. Astrue,* 521 F.3d 799, 803 (7th Cir. 2008). A vocational expert's testimony can satisfy this burden only if that testimony is reliable. *Britton,* 521 F.3d at 803. "A finding based on unreliable vocational expert testimony is equivalent to a finding that is not supported by substantial evidence and must be vacated." *Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008) (internal citations omitted.)

In his briefs to this Court, Plaintiff presents arguments rooted in the same objections he made in his post-hearing brief. After considering the parties' arguments, the Court finds that the ALJ did not support with substantial evidence his determination that significant jobs existed in the national economy that Plaintiff could perform.

1. The ALJ's Step Five Findings Did Not Address Plaintiff's Objections

At Step Five of his decision, the ALJ found that a significant number of jobs existed in the national economy that Plaintiff could perform. (R. 49.) He supported this finding by relying on the vocational expert's testimony that the three cited jobs matched

Plaintiff's RFC and were representative of a larger group of positions. (*Id.*) The ALJ also stated that in finding there were enough available jobs, he considered the claimant's level of disability, the reliability of the vocational expert's testimony, the consistency of the claimant's testimony, and the types and availability of such work. (*Id.*)

The ALJ did not meaningfully address Plaintiff's post-hearing challenges to the vocational expert's testimony before finding it reliable. Instead, the ALJ only stated that Plaintiff's attorney had "commented" on the vocational expert's job number testimony at the hearing and noted that Plaintiff had filed a post-hearing brief. (R. 50.) In particular, the ALJ did not acknowledge or evaluate Plaintiff's argument that the three positions occurred in numbers too small to be a reliable indicator of available jobs. The full extent of the ALJ's commentary on the vocational expert's reliability was a mention that the vocational expert testified that "the representative DOT represents a larger group," and a statement that the vocational expert used an average of SkillTRAN and U.S. Publishing to derive her numbers. (R. 50.) The ALJ also found that the vocational expert's testimony was consistent with the DOT without addressing Plaintiff's post-hearing argument that the reliance on broad job categories made it impossible to confirm the consistency of individual jobs with the DOT. (*Id.*)

2. The ALJ's Acceptance of the vocational Expert's Testimony Was Not Supported by Substantial Evidence

The ALJ erred by uncritically accepting the vocational expert's testimony that the three DOT codes were a reliable indicator of the number of jobs available to someone

with Plaintiff's RFC. *See Chavez v. Berryhill*, 895 F.3d 962, 970 (7th Cir. 2018) (the ALJ "need[s] to hold the vocational expert to account for the reliability of his job-number estimates" as part of his job at Step Five) (citing *Richardson v. Perales*, 402 U.S. 389, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)). While Plaintiff makes separate arguments about each job code, the ALJ's errors with respect to DOT 529.687-138 are enough on their own to compel remand.

The vocational expert testified that there were 22,000 "hand packer" jobs available to Plaintiff, but the representative DOT code she offered was for a tobacco leaf tier, for which fewer than 100 positions exist. In addition to contending that that number is not significant, Plaintiff argues that a tobacco leaf tier is a seasonal and regional job that does not exist near Plaintiff's home state of Indiana and thus is unavailable as an example of a possible position for him. (Pl. Br. at 3-4.) Defendant does not deny that a tobacco leaf tier is a seasonal and regional job but points out that the social security statute does not require consideration of the number of jobs in the particular region where the claimant lives, as long as there are a significant number of jobs in the national economy. (Resp. at 6.) To that end, Defendant argues only that DOT 529.687-138 is an adequate representative of a larger group of jobs Plaintiff could perform.

Substantial evidence does not support the ALJ's finding that there were 22,000 hand packer jobs in the national economy that Plaintiff could perform. Social Security

Regulation 20 C.F.R. 404.1566(b) states that SSA does not consider a job available in the national economy if it is an isolated job that exists only in very limited numbers in relatively few locations outside the region where the claimant lives. The regulation goes on to say that the SSA will not deny a claimant benefits based on the existence of these types of jobs. In this case, the apparent number of leaf tier jobs (65) is so low as to be insignificant, no matter where those positions are located. Therefore, the Court finds that DOT 529.687-138 is not a fair representation that 22,000 hand packer jobs are available to Plaintiff.

There is an additional problem with the vocational expert's testimony about DOT 529.687-138. The vocational expert testified that the DOT code was a representative "hand packer" position, but the DOT does not contain any job called "hand packer." As the Seventh Circuit has recognized, the closest job in the DOT is that of "hand packager" DOT 920.587-018, which includes a number of duties beyond Plaintiff's RFC. *See Browning v. Colvin*, 766 F.3d 702, 709 (7th Cir. 2014). For example, hand packagers might have to carry or stack products, work with a conveyor belt, or pack heavy items such as furniture; all of these duties are beyond Plaintiff's RFC.

Given these discrepancies, the Court finds that substantial evidence does not support the ALJ's finding that there are 22,000 hand packer (or packager) positions that Plaintiff can perform. *Browning v. Colvin,* 766 F.3d 702, 709 (7th Cir. 2014) (remanding in part because the vocational expert identified a job by name that did not match the DOT

code and there was no evidence how many jobs matching Plaintiff's abilities actually existed.)

Eliminating 22,000 jobs from the 44,000 total in the vocational expert's testimony leaves 22,000 possible positions remaining. Even without addressing Plaintiff's argument that DOT codes DOT 713.687-018 (bench assembler) and 669.687-014 (inspector) represent obsolete positions, the Court cannot conclude that the possibly remaining 22,000 is a significant number of jobs. The ALJ's decision neither addresses nor provides substantial evidence to support the assertion that 22,000 jobs constitute a significant number of jobs in the national economy. In the Seventh Circuit, ALJs are not required to substantiate every point they make but they must provide a minimal articulation that allows this Court to follow the ALJ's reasoning for meaningful appellate review. *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024); *see also Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003), citing *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The Court is unable to do so here. Consequently, the Court concludes that the Commissioner has not met its burden at Step Five by demonstrating that a significant number of jobs exist in the national economy that Plaintiff can perform.

## CONCLUSION

For the reasons explained above, the Court grants Plaintiff's brief in support of reversing the decision of the commissioner (Dkt. 17) and denies Defendant's response to the motion. (Dkt. 22.)

Laura K. McNally

LAURA K. MCNALLY
United States Magistrate Judge

Dated: 10/7/2026